## CLARISSA B. SULLIVAN v. MINNEAPOLIS STREET RAILWAY COMPANY.[1]

November 21, 1924.

No. 24,052.

**Question for jury whether defendant was negligent in making emergency stop.**

1. A street car track was 18 feet from the curb, but in going around a corner it came within 4 feet of the curb. A truck was standing by the curb about 20 feet from the corner. As a street car traveling from 4 to 6 miles per hour came up beside the truck, it started to go forward. The rails were wet. The motorman knew the physical conditions. He made an emergency stop by throwing his car into reverse. This threw plaintiff, a passenger, to the floor causing injury. *Held* defendant not negligent as a matter of law, but that it presented a question for the jury.

**Violation of city ordinance question for jury.**

2. Question as to whether city ordinance was violated and whether such violation was a proximate cause of injury was also a question for the jury.

**Evidence of collateral fact admissible, in discretion of court.**

3. Under the peculiar claim of plaintiff it was proper, in the discretion of the trial court, to receive in evidence proof of a collateral fact, to-wit, that no other claim for damages arising out of the accident was made.

**Witness cannot refer to memorandum except to refresh his memory.**

4. An *ordinary memorandum is not admissible in evidence* and a witness cannot refer to it, unless it appears that, without it, he cannot speak from memory as to the facts, for it is only in such cases that the witness needs the aid of the memorandum.

**Exception to preceding rule.**

An exception to the stated rule is that, when counsel imputes a design to misrepresent or charges a recent fabrication, it is proper to repel and refute such an imputation to show that the witness made a

[1] Reported in 200 N. W. 922.

similar statement or report as to the matter concerning which he testified at a time when the supposed motive did not exist.

## When written report of motorman is admissible.

5. A written report of an emergency stop, made by the motorman in the regular course of his work pursuant to an existing rule of the defendant and which is one of its office files and records is, in the discretion of the trial court, when properly verified, admissible as original evidence.

## When no review on appeal.

6. The exclusion of evidence as to mental condition bearing upon the amount of damage will not be considered where the jury have found no liability and there is an affirmance.

## No error.

7. Assignments of error found without merit.

## Instruction correct.

8. An instruction to the jury found to be proper.

## Request to charge properly denied—res ipsa loquitur.

9. A request for an instruction attempting to cover the doctrine of res ipsa loquitur was properly refused as being based upon a false hypothesis.

The occurrence of some accidents warrants or permits the inference of negligence. The accident calls for an explanation—does not necessarily require it. Such circumstances take the place of evidence to make a prima facie case to take the case to the jury, but it remains for the jury to decide whether there was in fact negligence.

The doctrine of res ipsa loquitur should not apply, unless the accident is brought about in a way that the responsibility therefor rests wholly upon the defendant, i. e., unless the instrumentality is exclusively under its control.

## When defendant may elect to tax disbursements.

10. Where two suits, arising out of the same state of facts, are by consent tried together and a verdict is rendered for the defendant in each case, he has the right to elect in which action he will tax disbursements, and he is entitled to tax costs against each plaintiff.

Two actions in the district court for Hennepin county, one by Clarissa B. Sullivan to recover $50,100 for personal injuries and the other by her husband, D. J. Sullivan, to recover $11,125 for loss of her services, medical attention and other expenses. The cases were tried together before Nye, J., and a jury which rendered a verdict for defendant in each case. Plaintiffs' motions for new trial were denied. From the judgments, plaintiffs took separate appeals. Affirmed.

*Mead & Bryngelson, Ernest Malmberg* and *Beth Bryngelson,* for appellants.

*Ralph T. Boardman,* for respondent.

WILSON, C. J.

Plaintiff was a standing passenger upon one of defendant's crowded street cars which was traveling northerly on Nicollet avenue in Minneapolis. When the car came near the corner of Nicollet and Grant, where the car tracks turn to the right on Grant, the motorman made an emergency stop. Plaintiff claims that she was thrown to the floor of the car on account of such stop and injured, resulting in a serious condition. She claims that defendant was negligent in not so operating its car, under the circumstances, as to have it under such control as to avoid collision without such a sudden stop. The track, in turning onto Grant street, comes within 4 feet of the curb. On Nicollet avenue it is about 18 feet from the curb and gradually crowds over until it makes the turn. It is the contention of defendant supported by its evidence that, as the car approached the turn, a truck stood next to the curb on Nicollet, facing the same direction as the street car, and about 20 feet from the corner. It had an inclosed winter top over the driver's seat. It had stakes on the side and the back and there were ice cream cans and barrels on the truck. There were other automobiles and trucks along the curb. The motorman could see no one about the truck. When the front end of the street car came up, about even with the rear wheels of the truck, it was traveling between 4 and 6 miles per hour. At that instant the driver of the truck, without notice or warning,

started the truck. If both had continued, a collision would have been inevitable because the rails gradually converge toward the curb. The motorman immediately reversed the car to avoid an accident. This was an emergency stop. He did not collide with the truck, but plaintiff claims to have been injured. The jury returned a verdict in favor of defendant. Plaintiff's motion for a new trial was denied and she now appeals from the judgment.

Plaintiff claims that she was entitled to a directed verdict and later entitled to a new trial because, she says, defendant was guilty of negligence as a matter of law and that the only question for the consideration of the jury was the amount of damages.

1. The morning was a misty one; there had been intermittent showers; the tracks were wet; the motorman from his position in the cab had a clear view. He was familiar with the construction of the tracks and the conditions of the day. It is claimed that he should have been on the lookout for just such a contingency as this, and that he should have had his car under such control that, should such an occasion arise, he might have checked it without doing injury to others. It is claimed that this case comes within the principle of Heiden v. M. St. Ry. Co. 154 Minn. 102, 191 N. W. 254, which holds that it is the duty of a motorman operating a street car, after dark, to have it under such control that, when the rays of the headlight enable him to discern a vehicle on the track, he can stop the car in time to avoid a collision. But here we have many automobiles parked by the curb. There was nothing to indicate that this particular truck was occupied by a driver. Neither was there any reason to expect it to move without notice or warning. At least we cannot say as a matter of law that it was negligence for the motorman to make the emergency stop under the circumstances. It was his duty in operating the car along the street to have due regard for known conditions and to take reasonable precautions to avoid accidents which such conditions render more probable. Should he have anticipated the danger that suddenly confronted him? Reasonable persons might differ on that question. If it was necessary to make the sudden stop in order to avoid a collision, it was his duty to make the stop in a reasonable manner.

The contention is made that the emergency stop only became imperative because of the previous negligence of the motorman in failing seasonably to consider and anticipate the probable movement of the truck. If he must assume that every truck or automobile, located so that in movement it would soon be upon the track, is to move without warning or notice, it will materially reduce the speed of traffic. There are a number of elements present which forbid us from saying that defendant was guilty of negligence as a matter of law. The question of negligence presented by the facts and circumstances is one of fact and was properly submitted to the jury.

2. It is also urged that the court should have instructed the jury that defendant was guilty of negligence as a matter of law because of a violation of a city ordinance fixing the carrying capacity of the street car. If it violated the ordinance, it would doubtless constitute negligence. McMahon v. Flynn, 154 Minn. 326, 329, 191 N. W. 902. But there is a proviso in the ordinance that two children under six years of age may be counted as one adult. The record is not such as to justify the conclusion, as a matter of law, that the ordinance was violated. This question was properly left to the jury as well as the question as to whether or not such violation of the ordinance caused or contributed to the injury. Plaintiff could not upon this record ask for a more favorable instruction upon this branch of the question. Even if the ordinance was in fact violated by a number of passengers, it would be doubtful if the evidence would disclose it as a proximate cause of the injury. It is not however necessary for us to determine this inquiry.

3. Defendant, through its chief claim agent, proved over plaintiff's objection that no other claim was made upon defendant arising out of the accident. It is claimed that this was error. Ordinarily it would have been, because the mere fact that other persons were not injured or did not seek damages would not be material or relevant. But here the plaintiff testified that the car was crowded and many passengers standing, and that because of the emergency stop all the passengers who were standing "were just

like one great mass of humanity just hurled right forward; they just went down headlong into the center of the aisle." "They (those holding straps) were torn right loose from the straps and went right down with the rest of us." "Everyone fell on top of each other." "I remember when I was getting up that I was lying on top of a man, and there was a lady lying on top of me, and I had to wait until she got up before I could get up." She also testified that a man who was thrown at the same time became very angry and she heard him repeat the number of the conductor. The defendant's conductor testified that no one was thrown to the floor. There is a sharp conflict in the testimony.

In view of the claims of plaintiff, this testimony had some bearing upon the improbability of the accident happening as she claimed. That bearing may have been remote and of little weight, but with that we are not concerned. This testimony related to a collateral fact, and in the discretion of the trial court was admissible. It had a direct tendency to show that the statements of a witness on one side were more reasonable, and therefore more credible, than the statements of a witness on the other side. Such testimony is admissible, but obviously must be received with caution. Glassberg v. Olson, 89 Minn. 195, 94 N. W. 554; Philips v. Mo. 91 Minn. 311, 97 N. W. 969; McKenzie v. Banks, 94 Minn. 496, 103 N. W. 497; Virtue v. Creamery Package Co. 123 Minn. 17, 44, 142 N. W. 930, 1136, L. R. A. 1915B, 1179, 1195; Farmer v. Studebaker Corp. 126 Minn. 346, 148 N. W. 285; Van Cappellan v. C. St. P. M. & O. Ry. Co. 126 Minn. 251, 148 N. W. 104; Sonnesyn v. Hawbaker, 127 Minn. 15, 148 N. W. 476; State Elev. Co. v. G. N. Ry. Co. 133 Minn. 295, 158 N. W. 399.

4. At the time of the accident defendant had in force a rule that required every motorman to forthwith make a report on every emergency stop. Defendant put in evidence, over plaintiff's objection, such report made out by the motorman, Northcut, immediately after this accident and turned in before he knew any one claimed to have been injured. It is as follows:

Emergency Stop Report.

Date 5-4 1920   Hour 7:45 A. M.

Place where happened Nicollet and Grant St.

Line   Nicollet a 2 St.   Car No. 1058

Direction car was going   North

License number, or name of vehicle   License number so dirty I could not get it.

Name Northcut   No. 695

Address   4720 Grand Av. So.

It is claimed that this evidence was inadmissible under the doctrine of Deatherage v. Petruschke, 106 Minn. 20, 118 N. W. 153; Gasser v. Wall, 111 Minn. 6, 126 N. W. 284; State v. Moses, 150 Minn. 470, 186 N. W. 303. The general rule as to an ordinary memorandum is that it is not admissible in evidence, and the witness cannot refer to it unless it appears that without it he cannot speak from memory as to the facts, for it is only in such case that the witness needs the aid of the memorandum. Such memorandum is not admissible in evidence until it is made to appear to the satisfaction of the trial court that the witness cannot testify to the details shown by the memorandum independently of it. Meyers v. McAllister, 94 Minn. 510, 103 N. W. 564; Naas v. C. R. I. & P. Ry. Co. 96 Minn. 84, 104 N. W. 717. The case of Force v. Gottwald, 149 Minn. 268, 183 N. W. 356, fails to mention all the elements making such memoranda admissible, but that does not extend or enlarge the rule herein expressed. This report was made in the regular course of business pursuant to an imperative rule of the defendant company. It was doubtless admissible in evidence, foundation being laid, in the absence of the witness, but here the witness testified to everything in the report as of his own knowledge. He did not need the report. The general rule precludes its reception. There is, however, a well recognized exception to this rule, and the exception is this:

When the counsel on the other side imputes a design to misrepresent—or charges a recent fabrication—from some motive of interest

or relationship, it is proper, in order to repel and refute such an imputation, to show that the witness made a similar statement or report as to the matter concerning which he testifies at a time when the supposed motive did not exist. Such evidence is in contradiction of the claim that the amount of the matter was a fabrication of late date, and it becomes material to show that the same account had been given before its ultimate effect and operation thereof upon one who then had an unknown claim for personal injuries was known to the witness. Note X 41 L. R. A. (N. S.) 889; Lyke v. Lehigh Valley R. Co. 236 Pa. 38, 84 Atl. 595; Jones, Ev. (3d ed.) § 870; State v. LaBar, 131 Minn. 432, 155 N. W. 211; Perkins v. G. N. Ry. Co. 159 Minn. 492, 199 N. W. 891.

The principle of this exception is inherently sound. It is not for the purpose of corroborating the witness, though it may do so incidentally. It may amount to much or to very little. He is corroborated, not by putting a prop under him, but by removing a burden or cloud from him, if any has been put upon him. In this case on oral argument, counsel for plaintiff charged the particular witness with falsehood and asserted that he never saw a truck standing by the curb at all. He termed the explanation of the motorman concerning the truck as an "alibi" to a situation of peril which he claimed was brought about by the motorman driving his car down onto the corner so fast that he could not safely make the curve, and hence was, for that reason, required to make the emergency stop. Doubtless the same claim and argument was made in the lower court. There is nothing to indicate that this theory was a new one in this court. If this was not the theory, the written report in evidence was of minor importance and would be harmless even if error. But if this report was made as claimed, it was persuasive evidence, particularly because of reasons given for failure to get plate or license number of the truck. The report was made in the regular course of business under a rule of the company. The jury would be reluctant to believe that he would make such a report before he knew of any one claiming to have been injured, if he had not in fact seen such a truck. If the report was made as claimed, the imputed motive did not exist. Such evidence is not

to be considered as original evidence of the truth of the fact reported, but purely in rebuttal of the inference that testimony was manufactured. It was perhaps offered too early in the case, but that was within the discretion of the trial court. This was the second trial and the issues were well defined and well known. The indictment of able counsel is often as powerful as testimony tending to impeach a witness. Such evidence is in support of the credibility of the witness, and should be received in rare instances where the credibility of the witness is by evidence or charges of counsel impeached in such a manner and to such an extent that the trial judge feels convinced that the witness is entitled to the support. Plaintiff might have requested appropriate instructions to the jury as to this evidence, but she did not. There was no error in receiving the report in evidence.

5. This report, however, in this case is more than a memorandum. It is one of the records of defendant. It was made by an employe in the regular course of his work pursuant to an existing rule of defendant. It was his duty to make the report. It was properly verified. It was one of defendant's office files or records. The object of evidence in a legal controversy is to ascertain the truth. Resort should be had to every proper means of learning the truth. Technical rules should not be sustained which obscure the truth instead of exposing it. The rule of defendant company requiring the making of this report had no reference to the matter in controversy in this litigation. The compliance with the rule had no reference to plaintiff's claim because her claim was then unknown to the motorman. Of course the existence of the rule was perhaps for the purpose of getting the facts causing and surrounding an emergency stop so that they would be known and available if claims arose out of such stops. But assuming that the motorman knew this, how could it be conceived that he would have surmised that the particular questions here involved might have arisen? Under such circumstances, the report is not self-serving. That it is pertinent and convincing testimony is shown by the earnest argument of counsel that the reception of this evidence was prejudicial. In fact, the nonproduction of such a report would probably result in

severe criticism, if not a presumption of the report being unfavorable to it. The trial court should scrutinize carefully the foundation for the reception of such evidence, but when the foundation is established such report is admissible as original evidence. Strand v. G. N. Ry. Co. 101 Minn. 85, 111 N. W. 958, 112 N. W. 987; Petit v. Teal, 57 Ga. 145; Swedish-American Nat. Bank v. C. B. & Q. Ry. Co. 96 Minn. 436, 105 N. W. 69.

6. Plaintiff complains of the ruling of the court excluding testimony of plaintiff relative to her mental condition. This evidence was directed to the amount of damages, and, because the jury has found no liability, and the lower court is to be affirmed, it becomes unnecessary to consider this assignment.

7. Assignments of error 9, 10, 11, present matters involved in the instruction to the court and are without merit.

8. Assignment 7 complains of this language in the charge to the jury:

"Negligence is never presumed; the burden of proof in this case is on the plaintiff to prove by a fair preponderance of the evidence both the negligence of the defendant and the amount and seriousness of her injuries. The defendant never has to disprove negligence, that is, the burden of proof, as I have already explained, is on plaintiff to show negligence."

This charge is consistent with the authorities cited below and when read with the balance of the charge was proper. That part of the charge which said that negligence was never presumed referred to the starting point. It could not have been construed otherwise. When so used it was proper.

9. Assignment 8 complains of the court's refusal to give plaintiff's requested instruction in this language:

"Where an injury occurs to a passenger through a defect in the construction or working or management of one of its cars, or anything pertaining to the service which the street car company ought to control, a presumption of negligence arises from the happening of the accident, and upon such proof by the plaintiff and a resulting injury, the duty will devolve upon the defendant company

to exonerate itself by showing the existence of cause for the accident beyond its control, and that it was not negligent."

Plaintiff is aggrieved because she claims the doctrine of res ipsa loquitur applies and that she was entitled to have her request given and that in the absence of such instruction this principle was not properly given to the jury. She was not entitled to have her request given. It is based upon a false hypothesis. The request is couched in such language as to indicate to the jury that the facts of the occurrence compel the inference of negligence, whereas in law such facts warrant or permit the inference of negligence. The jury is to determine whether in fact there is negligence. This request would likely be understood by the jury to mean that the inference of negligence in fact did exist, whereas the law says the jury is to decide the sufficiency of the evidence as justifying the inference of negligence. This charge says, "the duty will devolve upon the defendant company to exonerate itself" etc. but the law says that such circumstances call for explanation—not necessarily that they require it. Such circumstances take the place of evidence to make a prima facie case to take the case to the jury, but such circumstances do not anticipate the verdict. It still remains for the jury to decide whether the preponderance is with the plaintiff even if no explanation is given in response to the call therefor. It does not convert defendant's general issue into an affirmative defense. It may, as a matter of law, be destroyed by defendant's evidence. Keithley v. Hettinger, 133 Minn. 36, 157 N. W. 897, Ann. Cas. 1918D, 376; Holt v. Ten Broeck, 134 Minn. 458, 159 N. W. 1073, Ann. Cas. 1918E, 256; Manning v. C. G. W. R. Co. 135 Minn. 229, 160 N. W. 787; McGillivray v. G. N. Ry. Co. 138 Minn. 278, 164 N. W. 922; Wolter v. The Armstrong Tel. Exch. Co. 152 Minn. 492, 189 N. W. 431.

10.   In this case the doctrine of res ipsa loquitur does not apply. The thing "speaks for itself" when and because the defendant is in charge and control of the instrumentality and an accident happens which would not have happened ordinarily unless because of negligence. The defendant is in a better position to explain the reason for the accident than the injured person. It is in a

better position than any one else to know the cause. The doctrine is wholesome. But when the accident is brought about in a way that the responsibility therefor does not rest wholly upon the defendant, the doctrine obviously should not and does not apply. In the instant case the emergency stop was caused by the presence and movement of the truck. Whether the defendant was negligent under the circumstances was left to the jury. There is no contradiction. The plaintiff therefore was not entitled to a charge embracing the doctrine of res ipsa loquitur. That doctrine should be applied only when the instrumentality causing the accident is wholly under the control of the defendant. McGillivray v. G. N. Ry. Co. 138 Minn. 278, 164 N. W. 922; Fewings v. Mendenhall, 83 Minn. 237, 86 N. W. 96, 55 L. R. A. 17; 29 Cyc. 590. When the accident is due in part to the act of a third party over whom the defendant has no control, the doctrine is not applicable. Loehner v. North Chicago St. Ry. Co. 116 Ill. App. 365.

There are cases that hold, where passengers have been injured by collision between the carrier and a vehicle (not within its control), no prima facie case of negligence arises. Wolf v. Chicago Union Traction Co. 119 Ill. App. 481; Chicago City Ry. Co. v. Rood, 163 Ill. 477, 45 N. E. 238, 54 Am. St. 478; Black v. Boston Elev. R. Co. 187 Mass. 172, 72 N. E. 970, 68 L. R. A. 799; Thurston v. Detroit United Ry. 137 Mich. 231, 100 N. W. 395; Blew v. Philadelphia R. T. Co. 227 Pa. 319, 76 Atl. 17. We see no distinction between the injury arising out of such collision and one arising out of an emergency stop made to avoid a collision about to result from the wilfull or negligent conduct of a third party. But the court charged the jury that, if plaintiff was injured by the violent stop, then it devolved upon the defendant to show the cause of such sudden and violent stop, and if the entire evidence, including the explanation of the defendant, showed a want of care or negligence, the defendant was liable. This and other parts of the charge were so favorable to plaintiff that it leaves no room for complaint from plaintiff.

11. The same facts are the basis for two separate suits, one by the wife and the other by the husband. By consent they were

tried together. The jury found for the defendant in each case. The statute, section 7976, G. S. 1913, says "in every action" the prevailing party shall be allowed his disbursements. In a case like this he could not collect his disbursements twice, but he has the right to elect in which action he will tax these disbursements. Barry v. McGrade, 14 Minn. 214, 286. We see no reason why a defendant is not entitled to tax costs against each plaintiff. Slama v. C. St. P. M. & O. Ry. Co. 57 Minn. 167, 58 N. W. 989; Schuler v. M. St. Ry. Co. 76 Minn. 48, 78 N. W. 881; Independent School Dist. No. 22 v. School Dist. No. 19, 130 Minn. 19, 153 N. W. 113.

Order affirmed.