## STATE v. FRANK S. MELIN.[1]

December 13, 1929.

No. 27,468.

[1]Reported in 228 N. W. 171.

*Nelson & Cedergren,* for appellant.

*G. A. Youngquist,* Attorney General, *James E. Markham,* Deputy Attorney General, *Mason M. Forbes,* County Attorney, and *Harry E. Boyle,* Assistant County Attorney, for the state.

TAYLOR, C.

On March 22, 1928, Clara Youngbauer, while crossing Superior street in the city of Duluth, was struck and killed by an automobile owned and driven by defendant. He was convicted of the crime of manslaughter in the second degree on the charge that the death of Mrs. Youngbauer was caused by his culpable negligence. He appealed from an order denying a new trial.

Superior street is referred to in the record as running east and west. It is the principal street of the city and is paved and carries two street car tracks. It is crossed at right angles by Twelfth avenue east and Thirteenth avenue east. The accident occurred between 3:30 and 4 o'clock in the afternoon at the intersection of Superior street with Thirteenth avenue east. The day was bright and clear. East of Twelfth avenue and on the south side of Superior street there were two stores and then a large building known as the amphitheater. Some of the witnesses were standing in front of the entrance to this building. Mrs. Youngbauer was on the south side of Superior street and started to cross to the north side along the sidewalk line on the east side of Thirteenth avenue. Defendant claims that she started to cross the street some distance east of the sidewalk line, but the jury could well find that she was crossing at the proper place. She was near the middle of Superior street when struck by defendant's car coming from the west.

Defendant admits that his car struck Mrs. Youngbauer and inflicted injuries which caused her death, but contends that the evidence did not justify the jury in finding him guilty of culpable negligence.

Mrs. Goodman, Mrs. Wiley and Mrs. Mitchell in a new Victory Six owned and driven by Mrs. Mitchell were proceeding east on Superior street driving between the south street car track and the curb. They had a new car and were watching the speed. They say they were going 15 to 18 miles an hour. Defendant passed them shortly before they reached Thirteenth avenue. They say he was going at double the speed they were going. Mrs. Mitchell says that he passed them about 20 or 25 feet west of the west line of Thirteenth avenue. Mrs. Goodman and Mrs. Wiley say that he passed them a little more than a car's length west of that line. All three saw Mrs. Youngbauer in the street as defendant passed them. Mrs. Mitchell applied the brakes and stopped her car at the west edge of Thirteenth avenue. All three say that when defendant's car struck Mrs. Youngbauer she was thrown into the air. Mrs. Goodman and Mrs. Mitchell say she was thrown about eight feet high. Mrs. Wiley says that she was thrown high enough so that she saw her over the top of defendant's car.

Mrs. Goodman's husband and two friends, Mr. Morrison and Mr. Getsinger, were standing in front of the amphitheater as the ladies passed and watched them as they proceeded toward Thirteenth avenue. These men saw Mrs. Youngbauer start across the street. They also saw defendant as he passed and say that their attention was attracted to him by the speed at which he was driving. Two of them placed the speed at a rate of 35 to 40 miles an hour. They saw him pass the Victory Six and saw the accident. At the moment of the impact their view of Mrs. Youngbauer was cut off by defendant's car, but Getsinger says that he heard the sound of the impact and that she was thrown so high in the air that he saw her body over the top of defendant's car. The other two saw her body in the air and say that she was thrown to a height of six or eight feet. Her body was found 18 feet east of the crosswalk. Morrison at once started toward her on a run. Getsinger had his car at the curb, and he and Goodman jumped into it and reached Mrs. Youngbauer ahead of Morrison. She was placed in Getsinger's car and taken to a hospital, where she died a few minutes later. An

autopsy disclosed that death resulted from a rupture of the aorta.

Defendant went 145 feet east of the crossing before stopping his car. A policeman who arrived as Mrs. Youngbauer was being lifted into the Getsinger car placed defendant under arrest. There is testimony that he was under the influence of intoxicating liquor and testimony that he was not. He admitted having taken two sips of homebrew offered him by a truckman early that afternoon. He claims that Mrs. Youngbauer had passed beyond the path of his car but, hearing the horn of an automobile coming from the east, suddenly stepped back in front of his car. Witnesses who were looking testified that they saw no automobile coming from the east.

The evidence is too lengthy to summarize, and in the foregoing we have referred only to some of the more important facts. The testimony to the effect that defendant struck Mrs. Youngbauer with sufficient force to throw her 15 feet or more horizontally and to throw her into the air to such a height that she was seen over the top of his car, taken in connection with the other testimony to which we have adverted, is ample to sustain the verdict of the jury. State v. Goldstone, 144 Minn. 405, 175 N. W. 892; State v. Weltz, 155 Minn. 143, 193 N. W. 42; State v. Kline, 168 Minn. 263, 209 N. W. 881; State v. Shepard, 171 Minn. 414, 214 N. W. 280; also annotations in 16 A. L. R. 914, 21 A. L. R. 1504, 27 A. L. R. 1182, 41 A. L. R. 725, 42 A. L. R. 1120, and 46 A. L. R. 1060.

Defendant complains because Mrs. Wiley was permitted to testify as to the speed of defendant's car and because Mr. Goodman was permitted to testify as to the height to which the deceased's body was thrown in the air, but we see no error in the admission of this testimony.

The court in its charge quoted from the statute, which provides that a person driving a vehicle on a highway shall drive it at a speed not greater than is reasonable and proper under all the circumstances, and that driving it at a greater rate of speed than 20 miles an hour through the residence portion of a municipality shall be prima facie evidence that it was driven at a speed greater than was reasonable and proper. The court then told the jury that if

the state had not proved beyond a reasonable doubt that defendant had violated that statute they should give no further attention to the statute; but if the state had proved beyond a reasonable doubt that defendant had violated that statute he would be negligent in that respect, but that they should withhold any opinion as to the effect of such negligence until they heard the instructions as to culpable negligence. Defendant urges as error that the court in making the closing statement omitted to direct the attention of the jury to the fact that a speed greater than 20 miles an hour was only prima facie evidence of negligence. The court had just quoted that provision of the statute, and we see no error in not repeating it in the statement criticized. If defendant feared that the jury might not bear that rule in mind in connection with the following statement, he should have called attention to it at the time. He made no objection and took no exception to any part of the charge at the trial.

The court in its charge also read to the jury the statute which makes driving any vehicle on any highway while under the influence of intoxicating liquor a gross misdemeanor, and then gave them substantially the same instruction in respect to that statute that it gave in respect to the statute previously mentioned. Defendant urges this instruction as error on the ground that the evidence as to intoxication was not sufficient to justify submitting that question to the jury. We cannot sustain this contention. On the question of intoxication there may have been more evidence in defendant's favor than against him. But the officer who arrested him says that he smelled intoxicating liquor on defendant's breath. The chief of police says that he was drunk when brought to police headquarters. Another policeman says that he appeared to be under the influence of intoxicating liquor. The chief of detectives says that defendant was under the influence of intoxicating liquor and that he smelled liquor on defendant's breath. It was the province of the jury to weigh this testimony in connection with the opposing testimony, and the question was properly submitted to them.

A careful examination of the record discloses no ground for a reversal, and the order denying a new trial is affirmed.